WILLIAM K. JONES *and* MARY R. JONES, *his wife*

*v.*

EVERETT H. HUDSON, *widower, etc. et al.*

(No. 13719)

Decided July 5, 1977.

*McKittrick, Vaughan & McCormick, David P. Cleek* for appellants.

*Lawrence B. Mentzer* for appellees.

NEELY, JUSTICE:

This case concerns a contract for the sale of land voided by the Circuit Court of Jackson County on the ground that the description of the property attempted to be conveyed was vague, indefinite, and insufficient as a matter of law. Plaintiffs below, as buyers, brought an action seeking specific performance of the contract, and on September 18, 1975, the circuit court entered an order granting defendant-sellers' motion to dismiss the action. The plaintiffs below prosecuted this appeal from the circuit court's order, and we reverse.

In its entirety the contract reads as follows:

August 14, 1973

Everett and Eva Hudson do hereby sell to William K. and Mary R. Jones One-hundred (100) acres, more or less, located on the waters of Big Run.

Buyer is to receive the two and one-half (2-½) shares of the mineral rights that are presently owned by the Hudsons.

Buyer is also to receive the three (3) cows and one (1) heifer calf in with the price listed below. Buyer is also to get all the hay.

Total price for farm and things listed above is Twenty Thousand and Eight-hundred dollars ($20,800.00)

Sellers   Everett Hudson
          Eva Hudson
Buyers   William K. Jones
          Mary R. Jones

Received from William K. and Mary R. Jones Three-hundred Dollars ($300.00) as down payment on farm. Leaving balance of Twenty-thousand and five hundred dollars ($20,500.00)

Everett Hudson
Eva Hudson

An analysis of this contract must begin with West Virginia's Statute of Frauds, *W. Va. Code*, 36-1-3 (1923) applicable to contracts for the sale of land. Under this statute no contract for the sale of land is enforceable unless in writing, signed by the party against whom enforcement is sought. The contract in question appears generally to satisfy those requirements, and in particular, defendants below admitted they signed the contract.

The case, however, is not that simple. Longstanding judicial construction of the Statute of Frauds has engrafted onto it a requirement that contracts for the sale of land include a certain description of the land to be

conveyed. *White v. Core*, 20 W. Va. 272 (1882). The harshness of this rule has been significantly mitigated by the Court's frequent application of the maxim, "In description, that is certain which can be made certain." *Holley's Executor v. Curry*, 58 W. Va. 70 at 73, 51 S.E. 135 at 136 (1905). It should be obvious that neither the rule nor the maxim stated in this paragraph determines its own application, or dictates the result we reach in this case. The value of the rule and maxim in our analysis is that they present a classic illustration of the rule-selection process so often resorted to by appellate judges. We are thus put on guard to expect that the reported cases will not develop any sort of functional analysis of the problem confronted here. We are not disappointed in this respect, and after thoroughly reading the precedent we are convinced that in this area it is possible to justify any given result if a judge would apply the rules selectively and add a small measure of imagination into the bargain.[1]

With this much as preface, let us examine the contract closely. The date of its making, the parties bound by it, and the price term all appear clearly on the face of the contract and are not in dispute. Since the uncertainty of the land description is the deficiency alleged to exist in the contract, we turn to that description.

The land's approximate size is recorded: ". . . One-hundred (100) acres, more or less . . ." The land's location is mentioned: ". . . on the waters of Big Run." While this reference to Big Run helps locate the land, there is little else in the contract to help locate Big Run. Since, according to the complaint and answer, both buyers and sellers were residents of Jackson County, it is likely that Big Run may be found in Jackson County. *See Gilbert v. Tremblay*, 79 N.H. 431, 111 A. 314 (1920); *Hertel v. Woodard*, 183 Or. 99, 191 P.2d 400 (1948); and *Sholovitz v.*

---

[1] For a discussion of the rule selection process in another context, *see* footnote 5, the authorities cited therein, and the accompanying text, *Board of Church Extension v. Eads*, ___ W. Va. ___, 230 S.E.2d 911 (1976).

*Noorigian,* 42 R.I. 282, 107 A. 94 (1919). Since the buyers were to get "all the hay" together with "three (3) cows and one (1) heifer calf" we may logically infer the land was farm property. Our inference is supported by the contract's notation that the buyers received from the sellers a $300.00 down payment "on farm." Finally, we may infer that the Hudsons, as sellers, undertook to sell land which they owned, rather than land which they did not own. This common sense inference finds support in other jurisdictions' case law. *See, Danforth v. Chandler,* 237 Mass. 518, 130 N.E. 105 (1921); *Scott v. Marquette Nat. Bank,* 173 Minn. 225, 217 N.W. 136 (1927); *Price v. McKay,* 53 N.J.Eq. 588, 32 A. 130 (1895); and *Edwards v. Phillips,* 70 Okla. 9, 172 P. 949 (1918).

Thus it fairly appears that the subject matter of the disputed contract is a 100 acre farm on Big Run, most likely owned by the Hudsons and located in Jackson County. This description lays a satisfactory foundation for the admission of extrinsic evidence to make more certain that which in our view stands a good chance of being made more certain. Naturally, we may be mistaken in our view, and when evidence is taken, the sellers will have every opportunity to bring out ambiguities not now apparent and to rebut such evidence as the buyers present in their behalf. Nonetheless, on the record before us, we cannot say that the description is insufficient as a matter of law and incapable of being made certain by extrinsic evidence.

Accordingly, for the foregoing reasons, the order of the Circuit Court of Jackson County is reversed and the case is remanded for further proceedings not inconsistent with this opinion.[2]

*Reversed and remanded.*

---

[2] We have considered and found without merit appellants' contentions that appellees failed properly to plead the Statute of Frauds and that the circuit court is barred from raising the Statute of Frauds on its own motion, since the matter was raised in the preliminary stages of the case and the court could have permitted an amendment to the answer.